**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

TONY SANTIAGO,

                               Plaintiff,              No. 9:20-CV-1411
                                                          (TJM/CFH)

       v.

C.O. RYAN DICKERSHAID, and
SGT. SHERMAN,

                               Defendants.
_____

**APPEARANCES:**                                **OF COUNSEL:**

TONY SANTIAGO
21-A-0901
Plaintiff, pro se
Coxsackie Correctional Facility
P.O. Box 999
Coxsackie, New York 12051

Goldberg Segalla, LLP – Albany Office    JONATHAN M. BERNSTEIN, ESQ.
8 Southwoods Boulevard, Suite 300        THOMAS PAUL ARMSTRONG, ESQ.
Albany, New York 12211-2526
Attorneys for defendants

**CHRISTIAN F. HUMMEL**
**UNITED STATES MAGISTRATE JUDGE**

# REPORT-RECOMMENDATION AND ORDER[1]

## I. Background

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order by 28 U.S.C. § 636(b) and N.D.N.Y. Local Rule 72.3(c).

Plaintiff pro se Tony Santiago ("plaintiff"), an inmate currently in the custody of Coxsackie Correctional Facility, commenced this action on November 16, 2020, seeking damages pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights under the Fourteenth Amendment against defendants Schenectady County Jail, Correctional Officer Ryan Dickershaid ("C.O. Dickershaid"), Sergeant David Sherman ("Sgt. Sherman"), and "Lt. Lachanski."[2]  Dkt. No. 1 at 2-3; Dkt. No. 25-3 at 1, ¶ 3; Dkt. No. 7 at 6.

Presently pending before the Court are the remaining defendants Correctional C.O. Dickershaid's and Sgt. Sherman's (collectively, where appropriate, "defendants") motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 25.  Plaintiff has not filed an opposition or response.  For the following reasons, it is recommended that defendants' motion be granted and plaintiff's complaint be dismissed in its entirety, without prejudice.

## II. Summary Judgment Standard

Summary judgment is warranted if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  An issue of fact is material if it "might affect the outcome of the suit under the governing law[.]"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the

---

[2] On March 12, 2021, the Court conducted an initial review dismissing several claims, sua sponte, including all claims against the Schenectady County Jail Facility and Lt. Lachanski.  See Dkt. No. 7.

nonmoving party." Id. (citations omitted). "Factual disputes that are irrelevant or unnecessary will not be counted." Id. (citations omitted).

The moving party bears the initial burden of showing, through the production of admissible evidence, that no genuine issue of material fact exists. See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006). To meet this burden, the moving party can demonstrate that the non-movant has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotext Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-movant

> bears the burden of proof at trial, the movant may show prima facie entitlement to summary judgment in one of two ways: (1) the movant may point to evidence that negates its opponent's claims or (2) the movant may identify those portions of its opponent's evidence that demonstrate the absence of a genuine issue of material fact, a tactic that requires identifying evidentiary insufficiency and not simply denying the opponent's pleadings.

Salahuddin, 467 F.3d at 272-73 (citing Celotex, 477 U.S. at 323 (citations omitted)).

Where the moving party satisfies its burden "in either manner," the non-movant must "point to record evidence creating a genuine issue of material fact." Salahuddin, 467 F.3d at 273 (citations omitted). However, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Likewise, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Major

League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309 (2d Cir. 2008). Nevertheless, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." Jeffreys v. City of N.Y., 426 F.3d 549, 554 (2d Cir. 2005). "At the summary judgment stage, a nonmoving party must offer some hard evidence showing that [his] version of the events is not wholly fanciful." Id. (citations omitted).

In the Northern District of New York, Local Rule 56.1(b) requires the party opposing summary judgment to "file a separate Response to the Statement of Material Facts." N.D.N.Y. L.R. 56.1(b). The response must "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in a short and concise statement, in matching numbered paragraphs." Id. Importantly, "[t]he Court may deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."[3] "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996). Rather, "[s]uch a motion may properly be granted only if the facts as to which there is no genuine dispute 'show that the moving party is entitled to a judgment as a matter of law.'" Id. (quoting FED. R. CIV. P. 56(C)). "Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially

---

[3] Local Rule 56.2 also requires a party moving for summary judgment against a pro se litigant to "inform the pro se litigant of the consequences of failing to respond to the summary judgment motion." The movant's counsel must "send a notice to the pro se litigant that a motion for summary judgment seeks dismissal of some or all of the claims or defenses asserted in their complaint or answer and that the pro se litigant's failure to respond to the motion may result in the Court entering a judgment against the pro se litigant." N.D.N.Y. L.R. 56.2. Defendants filed a "Certificate of Service" affirming that a notice was served on plaintiff. See Dkt. No. 25 at 3; see also Dkt. No. 25-4.

meritorious memorandum of law, the non-movant is deemed to have 'consented' to the legal arguments contained in that memorandum of law[.]" <u>West v. Harkness</u>, No. 9:17-CV-621 (GTS/DJS), 2021 WL 4289515, at *10 (N.D.N.Y. Sept. 21, 2021) (footnote omitted) (citing N.D.N.Y. L.R. 7.1(a)(3)).  "Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possess[es] facial merit, which has appropriately been characterized as a 'modest' burden." <u>Id.</u> (citations omitted).

### III.  Defendants' Attorney Affidavit

Northern District of New York Local Rule 56.1(a) requires that:

Any motion for summary judgment shall contain a separate Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, a short and concise statement of each material fact about which the moving party contends there exists no genuine issue.  Each fact listed shall set forth a specific citation to the record where the fact is established.  The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers, to interrogatories, admission and affidavits.  It does not, however, include attorney's affidavits.  <u>Failure of the moving party to submit an accurate and complete Statement of Material Facts shall result in a denial of the motion.</u>

Herein, defendants submitted a Statement of Material Facts pursuant to L.R. 56.1 that contains short and concise factual assertions, in 26 numbered paragraphs, with specific citations to the record evidence.  <u>See</u> <u>generally</u> Dkt. No. 25-3.  Defendants also submitted an affidavit from attorney Thomas Paul Armstrong that contains roughly 40 paragraphs under a subheading titled "Statement of Material Facts."  Dkt. No. 25-1 at 3-13, ¶¶ 11-50.  It is evident that Attorney Armstrong does not have complete personal

knowledge of the facts asserted in his affidavit.  See id.; see also Cafferty v. Cayuga Medical Center, No. 08-CV-179 (NPM/ATB), 2011 WL 541809, at *11 (N.D.N.Y. Feb. 8, 2011) (citations omitted) (noting that "the record, for purposes of a motion for summary judgment, does not include attorney affidavits, as the purpose of an attorney affidavit is to provide background and is not made on personal knowledge.").  However, the affidavit provides specific citations to record evidence to support each assertion contained in Paragraphs 11 through 50.  See Dkt. No. 25-1, ¶¶ 11-50.  Essentially, this portion of Attorney Armstrong's affidavit is a second Statement of Material Facts.  See id.  Defendants provide no explanation or authorities as to why two separate statements are necessary or permissible.  See generally Dkt. No. 25.

For purposes of this motion, in addition to defendant's L.R. 56.1(a) Statement of Material Facts, the Court will consider the factual assertions contained in Attorney Armstrong's affidavit to the extent they are properly supported with citations to admissible record evidence.  See Dkt. No. 25-3; Dkt. No. 25-1 at 3-11, ¶¶ 11-50.  Notwithstanding, as the Local Rules do not expressly permit filing two Statements of Material Facts, and considering that the Local Rules state that a Statement of Material Facts does not include an attorney's affidavit, counsel is cautioned against repeating such practice in the future.  See L.R. 56.1.

## IV. Undisputed Facts[4]

From July 15, 2020, to June 16, 2021, plaintiff was incarcerated at the Schenectady County Jail ("the Jail"), where defendants are employed with the Schenectady County Sheriff's Office.  See Dkt. No. 25-3 at 1, ¶¶ 1-3.  On August 30, 2020, defendants were "working at the Jail and assigned to second shift."  Id. at 1-2, ¶¶ 6-7.  Plaintiff was "housed at the Jail in Cell Block F, assigned to Tier 8, Cell 43."  Dkt. No. 25-1 at 3, ¶ 12; Dkt. No. 25-2 at 187, 290.  At some point, "[b]etween 9:45-10:00 p.m., a fight broke out between two inmates in a neighboring tier with Cell Block F."  Dkt. No. 25-1 at 3, ¶ 12; see Dkt. No. 25-2 at 194-196, 290.[5]  "Due to the fight, inmates were told to hang up the phones and lock in earlier than normal at 9:50 p.m.  At the time of the fight, [plaintiff] was on the phone."  Dkt. No. 25-1 at 3-4, ¶ 12; see Dkt. No. 25-2 at 194-198.  When plaintiff hung up the phone and attempted to return to his cell, "the cell just shut in [his] face."  Dkt. No. 25-2 at 197-198.  Plaintiff "did not lock in prior to the cell gates closing."  Dkt. No. 25-1 at 4, ¶ 13; Dkt. No. 25-2 at 289.

As plaintiff failed to lock in, multiple correctional officers, including C.O. Dickershaid, responded to Cell Block F, Tier 8.  Dkt. No. 25-1 at 4, ¶ 14; Dkt. No. 25-2 at 298-299.  "Officers then instructed [plaintiff] to put his hands on the wall and opened his cell."  Id.  Thereafter, "[C.O.] Dickershaid instructed [plaintiff] to enter his cell and lay

---

[4] Defendants have submitted considerable record evidence in support of their motion, including several sworn statements from witnesses and the parties, in admissible form.  See Dkt. No. 25-2.  Notably, plaintiff's complaint is not notarized and there is no declaration indicating whether his allegations are sworn under penalty of perjury; however, as defendants have submitted the transcript for plaintiff's deposition proceeding, the Court has reviewed the sworn testimony therein to discern what facts, if any, plaintiff genuinely disputes.  See Dkt. No. 25-2 at 117-292.
[5] The CM/ECF document identified herein as "Dkt. No. 25-2" consists of hundreds of pages and over a dozen individually-identified exhibits, with various sets of page numbers.  For clarity's sake, the Court notes that all pages cited herein represent the CM/ECF-generated page numbers.

on his bunk until officers left the tier." Dkt. No. 25-1 at 4, ¶ 14; Dkt. No. 252-2 at 299, ¶¶ 8-9; see Dkt. No. 25-2 at 199.

On August 31, 2020, plaintiff was placed on "Shift Lock" due to his failure to lock in the evening before. Dkt. No. 25-1 at 5, ¶ 17; Dkt. No. 25-2 at 206-207, 290. Plaintiff was not permitted to leave his cell during his Shift Lock, which ended "[b]etween 3:30-4:00 p.m." Dkt. No. 25-1 at 5, ¶ 17; see Dkt. No. 25-2 at 208. After plaintiff's Shift Lock ended, officers escorted plaintiff and other inmates out of the cell block toward an outside yard for recreation. See Dkt. No. 25-1 at 5, ¶ 18; Dkt. No. 25-2 at 208. C.O. Dickershaid was holding open the recreation yard gate as plaintiff approached. See Dkt. No. 25-1 at 5, ¶ 19; Dkt. No. 25-2 at 209-210, 299. Although plaintiff knew that, according to Jail policy, inmates are not permitted to talk during transit, he made a comment to C.O. Dickershaid, which included, inter alia, referring to C.O. Dickershaid as "boy." Dkt. No. 25-1 at 5, ¶ 19; see Dkt. No. 25-2 at 210-213, 299. "Accordingly, [C.O.] Dickershaid told [plaintiff] that he would not be going to recreation, but would instead be escorted back to his cell." Dkt. No. 25-1 at 5, ¶ 20; see Dkt. No. 25-2 at 213, 299.

Thereafter, C.O. Dickershaid handcuffed plaintiff and, with additional officers, including Sergeant Brian Derochie ("Sgt. Derochie"), escorted plaintiff back to Cell Block F, Tier 8. See Dkt. No. 25-1 at 5-6, ¶¶ 20-21; Dkt. No. 25-2 at 290. After being returned to his cell, plaintiff was instructed to "lay on his cell bunk and remain on his bunk until the officers left the tier." Dkt. No. 25-1 at 6, ¶ 22; see Dkt. No. 25-2 at 216, 290. C.O. Dickershaid then "took off [plaintiff's] handcuffs and the officers exited [plaintiff's] cell." Dkt. No. 25-1 at 6, ¶ 22; see Dkt. No. 25-2 at 290, 299. "Immediately after the gate

closed, [plaintiff] got up from his cell bunk and put his hands through the cell bars." Dkt. No. 25-1 at 6, ¶ 23; see Dkt. No. 25-2 at 216, 290, 299. Plaintiff was instructed "to sit down on his bunk, but he refused." Dkt. No. 25-1 at 6, ¶ 23; see Dkt. No. 25-2 at 216, 290, 299-300. "Due to [plaintiff's] refusal to obey the order to sit down on his bunk, S[gt.] Derochie then instructed [plaintiff] to put his hands on his cell wall so he could be placed in handcuffs and informed [plaintiff] that he would be taken to the Special Housing Unit."[6] Dkt. No. 25-1 at 6, ¶ 24; Dkt. No. 25-2 at 290, 300. Plaintiff refused multiple orders. See id. at 7, ¶ 25; Dkt. No. 25-2 at 290, 300. After "a lot of back and forth[,]" including plaintiff stating "no, suck my dick[,]" "S[gt.] Derochie deployed pepper spray through the cell gate to gain [plaintiff's] compliance with the orders." Dkt. No. 25-1 at 6-7, ¶¶ 24-25; Dkt. No. 25-2 at 216-220, 290, 299-300.

Ultimately, officers entered plaintiff's cell, placed him in handcuffs, and escorted him "to the Tier 7/8 showers for decontamination of the pepper spray." Dkt. No. 25-1 at 7-8, ¶¶ 26-29; see Dkt. No. 25-2 at 290-291, 300. Following decontamination, plaintiff was escorted to "Medical," where he "was medically cleared to go to the Special Housing Unit." Dkt. No. 25-2 at 8, ¶ 30; Dkt. No. 25-2 at 291, 300. Sometime after being placed in the Special Housing Unit, plaintiff notified a correctional officer "that he needed to go to Medical." Dkt. No. 25-2 at 10, ¶ 36; Dkt. No. 291, 300. In response, Sgt. Sherman arrived at plaintiff's cell and noticed blood on plaintiff's face and cell bunk. See Dkt. No. 25-2 at 10, ¶ 36; Dkt. No. 25-2 at 295. Plaintiff was again escorted to "Medical" for evaluation by a nurse, who noted that plaintiff had "a large laceration to the

---

[6] The Court notes that a "Special Housing Unit" is a cell or group of cells that provides separation from the general inmate population and is intended for inmates in violation of facility rules and/or regulations. 7 N.Y.C.R.R. §§ 300.2, 301.2.

left eyebrow area, and [that] this was new since his previous visit one hour earlier." Dkt. No. 25-1 at 10, ¶ 38; see Dkt. No. 25-2 at 151, 295. Plaintiff was recommended for transport to an emergency room for stitches. See id. at 10, ¶ 38; Dkt. No. 25-2 at 151, 244.

"Upon booking into Schenectady County Jail, every inmate is given a Handbook notifying them in writing as to rules, regulations, and procedures of the Jail." Dkt. No. 25-1 at 11, ¶ 39; see Dkt. No. 25-2 at 305. Plaintiff received the Handbook when he arrived at the Jail and signed a receipt acknowledgement. See Dkt. No. 25-1 at 12, ¶ 45; Dkt. No. 25-2 at 305. The Handbook advises inmates as to the Jail's grievance procedure, including how to file a grievance. Id. at 11, ¶ 39. The Jail's grievance procedure includes several steps that an inmate must follow. See Dkt. No. 25-1 at 11, ¶ 40; Dkt. No. 25-2 at 305. "[A]n inmate is first required to address any issue with the House Unit Officer." Dkt. No. 25-1 at 11, ¶ 40; see Dkt. No. 25-2 at 305, 352. Next, "[i]f the inmate is unable to resolve the issue with the Housing Unit Officer, the inmate is instructed to address the situation with the Area Supervisor[.]" Dkt. No. 25-1 at 11, ¶ 40; see Dkt. No. 25-2 at 306, 352. If the issue is not resolved with the Area Supervisor, the inmate "may then request to see a Grievance Sergeant (there is a Sergeant designated as such on each active shift) to attempt to resolve the problem informally." Dkt. No. 25-2 at 352; see Dkt. No. 25-1 at 11, ¶¶ 40-41.

If the inmate cannot resolve the grievance informally, a grievance form is to be provided upon request. See Dkt. No. 25-1 at 11, ¶ 41; Dkt. No. 25-2 at 306, 352. "The inmate is instructed to submit the grievance within five days of the act or the occurrence giving rise . . . to the grievance to the Grievance Sergeant." Dkt. No. 25-1 at 11, ¶ 41;

10

Dkt. No. 25-2 at 306, 352.  After the inmate submits the form, "the grievance is investigated by the Grievance Sergeant, who is required to make a written determination within five (5) days of the receipt of the grievance, and then the decision is provided to the inmate."  Dkt. No. 25-1 at 11, ¶ 42; Dkt. No. 25-2 at 306, 352.  The inmate may appeal the Grievance Sergeant's determination to the Grievance Captain "within two (2) business days after receipt of the Sergeant's decision[.]"  Dkt. No. 25-1 at 12, ¶ 43; see Dkt. No. 25-2 at 306, 352.  The Grievance Captain must issue a written determination to the inmate "[w]ithin five (5) business days after the receipt of [the] appeal."  Id.  "If the inmate is not satisfied with the Grievance Captain's decision, the inmate must take a further appeal to the NYS Commission on Correction within three (3) business days of receiving the decision."  Dkt. No. 25-1 at 12, ¶ 44; see Dkt. No. 25-2 at 306, 352.  The Commission then has 45 days to issue a determination.  See id.

   Plaintiff did not file a grievance relative to the incidents on August 30 or August 31, 2020.  See Dkt. No. 25-1 at 12, ¶ 46; Dkt. No. 25-2 at 205-206, 306.  Nonetheless, following August 2020, plaintiff filed four separate and unrelated complaints using the Jail's grievance procedure.  See Dkt. No. 25-1 at 12, ¶ 47; Dkt. No. 25-2 at 306.  A Grievance Sergeant responded to each complaint during plaintiff's incarceration at the Jail.  See Dkt. No. 25-1 at 13, ¶ 48; Dkt. No. 25-2 at 306.  "[N]one of the grievances filed by [p]laintiff allege that there was a previous lost grievance, any officer misconduct in submitting grievance forms, or the inability to file a grievance related to the incidents complained of in [p]laintiff's Complaint."  Dkt. No. 25-1 at 13, ¶ 49; see Dkt. No. 25-2 at 306.

11

## V. Analysis[7]

### A. PLRA Exhaustion

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust any available administrative remedies before bringing an action for claims arising out of their incarceration. See Porter v. Nussel, 534 U.S. 516, 524 (2002); Dozier v. Genesee Cnty., No. 20-CV-6628 (EAW), 2022 WL 79723, at *4 (W.D.N.Y. Jan. 7, 2022) (citations and quotations marks omitted); 42 U.S.C. § 1997e(a). "[T]he PLRA exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532. Furthermore, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages. Id. at 524. "[T]o properly exhaust administrative remedies, prisoners must 'complete the administrative review process in accordance with the applicable procedural rules[.]'" See Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford v. Ngo, 548 U.S. 81, 88 (2006)). The applicable procedural rules "are not defined by the PLRA, but by the prison grievance process itself." Jones, 549 U.S. at 218.

"Exhaustion is mandatory—unexhausted claims may not be pursued in federal court." Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011). Nonetheless, "it is the defendants' burden to establish that [the] plaintiff failed to meet the exhaustion

---

[7] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

12

requirements." Matthews v. N.Y. State Dept. of Corrections, 9:17-CV-503 (TJM/ML), 2022 WL 823851, at *4 (N.D.N.Y. Mar. 18, 2022) (citations omitted).  A defendant satisfies this burden "by 'demonstrating that a grievance process exists' and that the plaintiff failed to utilize the grievance procedure." Ellis v. Riquier, No. 9:17-CV-577 (BKS/DJS), 2022 WL 523746, at *3 (N.D.N.Y. Feb. 22, 2022) (quoting White v. Velie, 709 F. App'x 35, 38 (2d Cir. 2017) (summary order); see also Williams v. Prianto, 829 F.3d 118, 126 n.6 (2d Cir. 2016)).  Upon such a showing, the plaintiff "must show that 'other factors rendered a nominally available procedure unavailable as a matter of fact.'" Ellis, 2022 WL 523746, at *3 (quoting Hubbs v. Suffolk Cnty. Sheriff's Dept., 788 F.3d 54, 59 (2d Cir. 2015) (citations omitted)).[8]

      Herein, defendants argue plaintiff failed to pursue the Jail's available administrative remedies.  See Dkt. No. 25-5 at 17-21.  Defendants have submitted admissible record evidence demonstrating that the Jail maintains an inmate grievance procedure.  See Dkt. No. 25-1 at 11-12, ¶¶ 39-44; Dkt. No. 25-2 at 352-353.  Defendants have introduced evidence showing that the Jail's grievance procedure is outlined in its Handbook; that a copy of the Handbook was provided to plaintiff during his incarceration; and that plaintiff was aware of the Jail's grievance procedure as he

---

[8] The Supreme Court has stated that "[a]n inmate need exhaust only such administrative remedies as are 'available.'" Ross v. Blake, 578 U.S. 632, 648 (2016).  There are three circumstances in which a court may find a facility's internal administrative remedies are not available under the PLRA:
> (1) An administrative procedure is unavailable when it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use; and (3) an administrative remedy is not 'available' when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

Matthews, 2022 WL 823851, at 5 (quoting Ross, 578 U.S. at 643; Girard v. Chuttey, 826 F. App'x 41, 44 (2d Cir. 2020)).

filed multiple unrelated grievances.  See Dkt. No. 25-5 at 18-19; Dkt. No. 25-1 at 12-13, ¶¶ 39-50; Dkt. No. 25-2 at 352-353.

Plaintiff admitted during his deposition testimony that he did not file a grievance relative to any incident on August 30 or 31, 2020.[9]  See Dkt. No. 25-2 at 205-206.  Plaintiff stated that he initially sought a grievance form from "Correctional Officers, sergeants, whoever would walk past [his] cell[,]" but that, in response, he was told to "ask the sergeant."  Id. at 204.  Plaintiff stated that when he asked the sergeant, he was told that he needed to ask the Grievance Sergeant, but that the Grievance Sergeant "never comes."  Id.  Plaintiff testified that this was "going on for my whole sentence at Schenectady County."  Id.  However, plaintiff admits that, prior to leaving the Jail, he ultimately filed several unrelated grievances.  Id. at 205; see Dkt. No. 25-3 at 3, ¶¶ 24-26.  By way of example, on or about March 17, 2021, plaintiff filed a grievance alleging that he was purportedly "strip[] searched" in front of another inmate on February 25, 2021.  Dkt. No. 25-2 at 374.  Notably, plaintiff acknowledged that his March 2021 grievance was filed "late" in light of the Jail's procedure.[10]  Id.; see Dkt. No. 25-1 at 11, ¶¶ 41-42.  Despite being filed late, the grievance was considered and denied on the merits in a written determination.  See Dkt. No. 25-2 at 375.

Plaintiff's testimony indicates that he may not have had immediate access to the Jail's grievance forms, particularly as he was in the Jail's Special Housing Unit for

---

[9] Notably, plaintiff filed his complaint using a pre-printed form designed for Section 1983 prisoner claims. See generally Compl.  Under the subheading "Exhaustion of Administrative Remedies Administrative Procedures," the inquiry labeled "VII.D" states "[d]id you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?"  Id. at 8-9.  Plaintiff checked "no" in response.  Id. at 9.

[10] The Court notes that plaintiff stated he filed the grievances "late" because he purportedly did not receive the grievance forms.  Dkt. No. 25-2 at 375.

14

approximately 45 days in connection with the events at-issue. See Dkt. 25-2 at 203-206, 252-253, 256-257; Dkt. No. 25-1 at 6, ¶ 24. However, it is undisputed that plaintiff later obtained multiple grievance forms and filed several complaints without referencing the August 2020 incidents. See Dkt. No. 25-1 at 13, ¶ 49; Dkt. No. 25-2 at 203-206. Even assuming plaintiff's time for filing a grievance had expired when he obtained the forms, he never subsequently attempted to address the incidents at-issue through the Jail's established procedure, or complain that he was improperly denied access to the grievance process. See Dkt. No. 25-3 at 3, ¶¶ 20-26. As the record shows, plaintiff has pursued grievances that he knew were untimely through the Jail's procedure—grievances that were nonetheless considered on the merits; thus, the Court finds that plaintiff had an available administrative remedy. See Dkt. No. 25-2 at 374-375; Dkt. 25-2 at 203-206; Dkt. No. 25-1 at 11-13, ¶¶ 39-50. Accordingly, defendants have satisfied their burden establishing that plaintiff failed to exhaust his administrative remedies prior to bringing suit, as required under the PLRA.[11] See Matthews, 2022 WL 823851, at *4 (citations omitted). As such, it is recommended that plaintiff's complaint be dismissed for failure to exhaust available remedies pursuant to the PLRA.

## B. Dismissal With Prejudice

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion requirement is dismiss the complaint without prejudice, to give the inmate a

---

[11] In any event, in light of plaintiff's failure to file any opposition, the undersigned finds that plaintiff has effectively "consented" to defendants' affirmative defense argument; hence, the Court finds it unnecessary at this time to reach defendant's remaining arguments for dismissal. L.R. 7.1(a)(3); West, 2021 WL 4289515, at *10 (citations omitted).

15

chance to exhaust his administrative remedies and then refile his complaint." Brown v. Napoli, 687 F. Supp. 2d 295, 298 (W.D.N.Y. 2009) (citations omitted).  "This is so even when the issue is decided on a motion for summary judgment." Mateo v. Corebine, No. 09-CV-4811, 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases). "Notwithstanding, 'where the inmate can no longer exhaust administrative remedies because he or she has been transferred or is no longer in custody and had ample opportunity to exhaust prior to being released or transferred but failed to do so, dismissal with prejudice is proper." James v. Doty, No. 17-CV-1145 (MAD/CFH), 2019 WL 1474309, at *6 (N.D.N.Y. Jan. 4, 2019), report and recommendation adopted, 2019 WL 457694 (N.D.N.Y. Feb. 6, 2019) (citations omitted); see also Greene v. Desousa, No. 14-CV-6290 (SJF/AYS), 2016 WL 3460376, at *3 (E.D.N.Y. Jun. 21, 2016) (dismissing complaint with prejudice where the plaintiff was "no longer in custody at the [facility] and she can no longer exhaust administrative remedies.").

Herein, defendants request that plaintiff's complaint be dismissed with prejudice due to this failure to comply with the PLRA exhaustion requirement.  See 25-5 at 21. Plaintiff's incarceration at the Jail ended on June 16, 2021, almost a year after the incidents at-issue.  See Dkt. No. 25-3 at 1, ¶ 1.  The record shows that plaintiff filed multiple grievances several months prior to leaving the Jail.  See id. at 3, ¶ 24; Dkt. No. 25-2 at 203-205.  As such, plaintiff had ample opportunity to exhaust his administrative remedies.  See James, 2019 WL 1474309, at *6 (citations omitted).  Accordingly, the undersigned recommends dismissal of plaintiff's claims with prejudice.

### VI. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that plaintiff's complaint's (Dkt. No. 1) be **DISMISSED WITH PREJUDICE**;

**ORDERED**, that the Clerk of the Court serve a copy of this Report Recommendation and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), that the parties have FOURTEEN (14) days within which to file written objections to the foregoing report. Any such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. See Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[12]

Dated: June 13, 2022
      Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge

---

[12] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. See FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. See id. § 6(a)(1)(c).